290 P.3d 228

**STATE of Arizona, Appellee,**

v.

**Terry Wayne TATLOW, Appellant.**

**No. 1 CA–CR 11–0593.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 4, 2012.

Thomas C. Horne, Arizona Attorney General by Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Division and Katia Mehu, Assistant Attorney General, Phoenix, Attorneys for Appellee.

The Law Offices of Kelly A. Smith by Kelly A. Smith, Yuma, Attorney for Appellant.

## OPINION

SWANN, Judge.

¶ 1 Terry Wayne Tatlow appeals the superior court's revocation of his probation and its imposition of a 2.5 year prison sentence following his unsuccessful participation in a drug court program. He contends that federal law makes his drug court record confidential, and that the superior court erred when it relied on information concerning his drug court record to revoke his probation and refused to recuse itself from the revocation proceedings. We hold that federal law does not prohibit the superior court from considering its own drug court records in revocation proceedings. Because the record supports the revocation of Tatlow's probation, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶ 2 In June 2008, Tatlow pled guilty to one count of third-degree burglary and was placed on probation for three years. In May 2010, the Yuma County Drug Court accepted Tatlow into its program as part of his probation. The conditions of probation required Tatlow to "[p]articipate and cooperate in any program of counseling or assistance as directed by" the court or the probation department ("Condition 10") and to abide by the "Special Regulations" of the drug court program ("Condition 25"). The Special Regulations required Tatlow to "[c]omply with the treatment provider and allow the provider to disclose to the court and/or the Probation Department all information about [his] attendance and progress in treatment" ("Special Regulation 5") and to "[c]omply with all of the requirements of each of the Drug Court phases" ("Special Regulation 8"). Tatlow also signed a "Consent and Waiver of Confidentiality," which authorized the disclosure of information regarding his treatment.

¶ 3 On June 6, 2011, the drug court held a status hearing and found that "[Tatlow's] attendance sheet" for the treatment program contained a "forged signature." The court then terminated Tatlow from the drug court program. On June 7, 2011, the probation department filed a petition to revoke, alleging that Tatlow violated Condition 10 of his probation when he failed to participate and cooperate in a program of counseling or assistance. The petition further alleged that Tatlow violated Condition 25 of his probation when he failed to complete the drug court program successfully. Tatlow filed a motion to dismiss the petition to revoke, arguing that the petition was improperly based on confidential information. The superior court denied the motion.

¶ 4 The judge who presided over Tatlow's drug court proceedings also presided over his probation revocation proceedings. At the revocation hearing, the court took judicial notice of its earlier order terminating him from the drug court program. The court then ruled that Tatlow had violated Conditions 10 and 25 of his probation. It revoked Tatlow's probation and sentenced him to 2.5 years in prison.

¶ 5 Tatlow timely appeals. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and A.R.S. §§ 12–120.21(A), 13–4031 and 13–4033.

### DISCUSSION

### I. THE COURT PROPERTY DENIED TATLOW'S MOTION TO DISMISS THE PETITION TO REVOKE.

¶ 6 Tatlow argues that revocation of his probation was reversible error, because the revocation was based on information pertaining to his failed drug court participation that was confidential as a matter of federal law. He argues that this confidentiality should have prevented the court from taking judicial notice of its own order terminating him from the drug court program. He also contends that the evidence was insufficient to support the revocation, and that the judge should have recused herself from the revocation proceedings. We address each contention in turn.

A. *Federal Confidentiality Regulations Did Not Prohibit the Court from Taking Judicial Notice of Its Own Order.*

¶ 7 Federal law makes confidential all information maintained in connection with programs that are both: (1) related to a patient's substance abuse treatment or reha-

**38**

bilitation; and (2) directly or indirectly assisted by the federal government. 42 U.S.C. § 290dd–2(a) (1998); 42 C.F.R. § 2.12(a), (e). A person may give written consent to the disclosure of such information, in a form prescribed by federal regulation. *See* 42 U.S.C. § 290dd–2(b)(1); 42 C.F.R. § 2.13(a), (c); 42 C.F.R. § 2.31. The information may also be disclosed pursuant to a court order that complies with federal law. 42 U.S.C. § 290dd–2(b)(2)(C).

¶ 8 Generally, no records pertaining to treatment may be used to conduct any investigation of a patient. 42 U.S.C. § 290dd–2(c); 42 C.F.R. § 2.12(d). But 42 C.F.R. § 2.35(a) permits a treatment program to disclose information to agencies, such as courts, that make participation in the program a condition of the disposition of a criminal proceeding when the patient has signed a written consent consistent with 42 C.F.R. § 2.31.

¶ 9 At the outset, we note that there is also nothing in the record to support Tatlow's claim that his treatment program actually received federal assistance. In his opening brief, Tatlow argues conclusorily: "[t]here is no dispute in the record that the Yuma County Drug Court Program and/or the court and probation system in general is,

in fact, federally funded and/or assisted. Documentation of such is attached…." Tatlow offers no further argument and cites no additional evidence or authority to support this assertion.

¶ 10 Close examination of the record reveals that it does not support Tatlow's assertion. There is nothing in the record demonstrating that the federal government directly or indirectly assisted any program or activity related to Tatlow's substance abuse education, treatment, or rehabilitation at or around the time Tatlow participated in the drug court program.[1] Absent federal assistance, the federal confidentiality laws found in 42 U.S.C. § 290dd–2 and the associated federal regulations would have no application.

¶ 11 We would affirm even if facts existed to trigger the application of federal law, because Tatlow signed a Consent and Waiver of Confidentiality when he entered the drug court program.[2] The Consent and Waiver expressly permitted disclosure of information, including Tatlow's identity, diagnosis, prognosis, treatment and attendance in connection with the treatment he underwent as part of his participation in the drug court program. Consistent with 42 C.F.R. § 2.35, the Consent and Waiver authorized disclo-

---

1. A detailed review of the attached documentation revealed six potentially relevant documents:

   1. A description of a "Drug Court Program" supported by a federally funded grant. But that grant applies only to "operate a drug court program to rehabilitate juvenile substance abusers." There is no indication that the county actually received such a grant or that funds received for juvenile drug court programs may have been used to support the adult drug court program.
   2. A document, prepared by the Arizona Administrative Office of the Courts, that discusses probation services, which fails to specify whether the federal government assisted the Yuma County Drug Court.
   3. A description of how the Arizona Criminal Justice System distributes federal funds awarded through "Byrne/Justice Assistance Grants." While the Yuma County Drug Court received Byrne/Justice Assistance Grants in 2002, the record fails to demonstrate that assistance was still in place at any time relevant to this case.
   4. A pamphlet indicating that a future renovation of the Yuma County Probation Department lobby would be paid for with federal funds, which fails, however, to state whether any feder-

   al funds were eventually spent or whether the lobby was even renovated.
   5. An executive summary of the Department of Justice's audit of Yuma County's use of funds awarded by the Federal Office of Justice Programs, which indicates that Yuma County received funds in 2006. The summary does not reveal whether additional funds have since been received or spent.
   6. An audit of Yuma County's spending of various federal awards, which indicates that Yuma County received a grant from the U.S. Department of Justice through the "Drug Court Discretionary Grant Program." The audit is for the fiscal year ending in June 2004, and does not indicate whether funds have since been used.

2. The court's form of Consent and Waiver was drafted to comply with federal law. Despite Tatlow's failure to furnish a record from which we can determine the applicability of federal law, the court's own use of the form suggests that federal confidentiality requirements may govern. And in view of the broad definition of "federal assistance" contained in 42 C.F.R. § 2.12(b)(3), we address Tatlow's arguments on the assumption that federal law applies.

sure to all judges, prosecutors, defense attorneys, and probation officers assigned to Tatlow's case. Tatlow does not contend that the form of Consent and Waiver violated federal law.

¶ 12 By its terms, the Consent and Waiver expired upon "defendant's graduation from the Drug Court or his/her termination from the Drug Court Program." The premise underlying Tatlow's entire argument on appeal is: because he was terminated from the program on June 6, the June 7 petition to revoke and all later proceedings thereon were tainted by the fact that the Consent and Waiver automatically expired "upon his termination." We reject this premise.

■ ¶ 13 The expiration of the Consent and Waiver did not prohibit the use of information concerning Tatlow's unsuccessful termination from drug court in later probation revocation proceedings. 42 C.F.R. § 2.35(a) provides:

A program may disclose information about a patient to those persons within the criminal justice system which have made participation in the program a condition of the disposition of any criminal proceedings against the patient or of the patient's parole or other release from custody if:

(1) The disclosure is made only to those individuals within the criminal justice system who have a need for the information in connection with their duty to monitor the patient's progress (e.g., a prosecuting attorney who is withholding charges against the patient, a court granting pretrial or posttrial release, probation or parole officers responsible for supervision of the patient); and

(2) The patient has signed a written consent meeting the requirements of § 2.31 . . . and the requirements of paragraphs (b) and (c) of this section.[3]

¶ 14 Here, as in many drug court matters, Tatlow's participation in the program was a

condition of his probation and release. Section 2.35 plainly contemplates that failure to successfully complete a drug court program may result in the disclosure of adverse information to justice system personnel. Indeed, section 2.35(d) provides that such information may be "*redisclose[d]* and use[d]" to carry out official duties with regard to the participant's release from custody. (Emphasis added.) This provision makes clear that the trial judge was not required to forget that she had terminated Tatlow from the drug court program. The court's judicial notice of its own order—whether considered a "redisclosure" of information to the court system or "use" of information by the court system—was therefore entirely proper.[4] The expiration of the Consent and Waiver could have operated to prevent use of information that came into the court's possession *after* it had expired, but it did not prevent use of information of which the court became aware during its effective period.

B. *The Revocation of Tatlow's Probation Was Supported by Sufficient Evidence.*

■ ¶ 15 Tatlow next contends that there was insufficient evidence to support the court's finding that he violated the terms of his probation. The state must prove a defendant violated a term of probation by a preponderance of the evidence. *State v. Tulipane,* 122 Ariz. 557, 558, 596 P.2d 695, 696 (1979). To revoke a defendant's probation, "[i]t is enough for the trial court to have a 'reason to believe' that the individual is 'violating the conditions of his probation or engaging in criminal practices[.]'" *State v. Smith,* 112 Ariz. 416, 419, 542 P.2d 1115, 1118 (1975). We will not reverse a trial court's determination that a defendant violated a term of probation unless the court's finding is "arbitrary and unsupported by any theory of the evidence." *State v. Stotts,* 144 Ariz. 72, 79, 695 P.2d 1110, 1117 (1985). We view the evidence in the light most favorable to

---

**3.** Paragraphs (b) and (c) require the consent to state its duration and the terms upon which it can be revoked.

**4.** The Consent and Waiver itself contemplates disclosure of some information after its expiration. For example, Tatlow consented to the later

broadcast of photographs and videotapes of drug court events, stating: "I knowingly understand that my identity may be revealed and confidentiality breached, and willingly consent to such disclosure."

sustaining the court's finding. *State v. Vaughn*, 217 Ariz. 518, 519, ¶ 3 n. 2, 176 P.3d 716, 717 n. 2 (App.2008).

¶ 16 Here, the state presented sufficient evidence to support the trial court's finding that Tatlow violated the conditions of his probation. Specifically, the state presented evidence that Tatlow caused the forgery of his signature on an attendance sheet for the treatment program, failed to abide by the Special Regulations of the drug court program, failed to comply with the directions of the treatment provider, and failed to comply with all of the requirements of each phase of the Drug Court. This evidence adequately supports a finding that Tatlow willfully violated Conditions 10 and 25 and Special Regulations 5 and 8.

¶ 17 Tatlow argues that everyone but his attorney "was aware and privy to the information as to why, in fact, the Defendant had been terminated [from the drug court program]." He contends that the information was so confidential that even he had no access to the information used against him. These claims are, at best, groundless. The record shows Tatlow personally appeared at the drug court status hearing with counsel. The court spoke directly to Tatlow about his forged signature. Tatlow and his counsel, therefore, knew exactly why the trial court terminated him from the drug court program. Although different defense counsel appeared with Tatlow at the next revocation hearing, nothing prevented new counsel from learning why Tatlow was terminated from the program. Finally, Tatlow has presented no legal or factual reason that he could not have obtained copies of sealed records from his own case.

C. *The Judge Did Not Err by Failing To Recuse Herself from the Revocation Proceedings.*

¶ 18 Tatlow finally contends that the trial judge erred when she failed to recuse herself from the revocation proceedings, because she had personal knowledge of the proceedings in the drug court and knew why Tatlow was terminated from the drug court program. We disagree.

¶ 19 First, Tatlow did not raise this issue below. The failure to raise an issue at trial waives all but fundamental error. *State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991). "To establish fundamental error, [a defendant] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 568, ¶ 24, 115 P.3d 601, 608 (2005). Even when fundamental error has been established, a defendant must still demonstrate the error was prejudicial. *Id.* at ¶ 26. We find no error, fundamental or otherwise. As we have explained, there was no legal prohibition against the court's using its own knowledge of the history of the case in later proceedings.

¶ 20 Further, allegations of bias or prejudice on the part of a court must be specific and the supporting facts "concrete." *State v. Ellison*, 213 Ariz. 116, 128, ¶ 37, 140 P.3d 899, 911 (2006). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *State v. Ramsey*, 211 Ariz. 529, 541, ¶ 38, 124 P.3d 756, 768 (App. 2005) (citation omitted). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion,' ... without showing '[ ]either an extrajudicial source of bias [ ]or any deep-seated favoritism[.]' " *Ellison*, 213 Ariz. at 129, ¶ 40, 140 P.3d at 912 (first alteration added) (citations omitted). Tatlow makes no specific allegations of bias or prejudice. The mere fact that the same judge who terminated Tatlow from the drug court program later revoked his probation is of no matter. Tatlow does not even suggest, much less demonstrate, that the judge held any "deep-seated favoritism or antagonism." The judge's failure to recuse herself was not error.

## CONCLUSION

¶ 21 For the foregoing reasons, we affirm the revocation of Tatlow's probation and the sentence of imprisonment.

CONCURRING: PHILIP HALL,
Presiding Judge, and LAWRENCE F.
WINTHROP, Chief Judge.