NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

PHAROAH PADILLA, *Appellant.*

No. 1 CA-CR 14-0410
FILED 10-15-15

Appeal from the Superior Court in Coconino County
No. S0300CR20080954
The Honorable Joseph J. Lodge, Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

White Law Offices, PLLC, Flagstaff
By Wendy F. White
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Judge Andrew W. Gould joined. Presiding Judge Donn Kessler specially concurred.

---

**N O R R I S**, Judge:

**¶1**         Pharoah Padilla appeals from the superior court's revocation of his probation and resulting prison sentences. On appeal, Padilla essentially argues the State failed to prove he had willfully violated his probation. He also challenges the constitutionality of a term of probation that prohibited him from going to or loitering near parks or "other places primarily used by children," and argues the superior court was biased against him and improperly imposed consecutive sentences. For the following reasons, we reject these arguments and affirm Padilla's probation revocation and prison sentences.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**         In January 2010, Padilla pleaded guilty to two counts of sexual abuse of a minor, each a dangerous crime against children. Because Padilla entered his plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), he maintained his innocence. "*Alford* stands for the proposition that a trial court may, without violating the Constitution, accept a plea of guilty from a defendant who maintains that he did not commit a crime." *Duran v. Superior Court*, 162 Ariz. 206, 207, 782 P.2d 324, 325 (App. 1989). The parties stipulated that if Padilla violated his probation, he would be sentenced to consecutive terms of incarceration not to exceed ten years.

**¶3**         On February 4, 2010, the superior court placed Padilla on lifetime intensive probation. As relevant here, the terms of probation required Padilla to "actively participate in evaluation and treatment, including but not limited to, psychological, psychiatric and physiological assessments, and/or the polygraph" ("treatment term"); abide by any curfew his probation officer imposed ("curfew term"); submit to drug and alcohol testing ("testing term"); and charge his GPS monitor daily for at least two hours ("GPS term"). The terms of probation prohibited Padilla from consuming alcohol ("alcohol term") and "go[ing] to or loiter[ing] near . . . parks, playgrounds, . . . or other places primarily used by children under the age of 18" ("park term").

¶4            In September 2010, pursuant to the treatment term, Padilla began attending weekly group therapy sessions for sex offenders conducted by K.K. During the next 16 months, Padilla missed some of the sessions and failed to meaningfully participate in others. When he attended group therapy, Padilla was continually "oppositional and defiant," and he refused to explain why the polygraph examination results indicated deception. On January 23, 2012, K.K. sent Padilla's probation officer a letter stating he was dismissing Padilla from the sex offender treatment program.[1]

¶5            The next day, Padilla's probation officer petitioned to revoke Padilla's probation, alleging Padilla had been dismissed from sex offender treatment because of his "non-compliance." The petition also alleged Padilla had consumed alcohol on three occasions; traveled past or through a Flagstaff park, Thorpe Park, three times in one day; violated his curfew twice; failed to submit to a urinalysis twice; failed to charge his GPS tracking device; and failed to participate in three polygraph examinations.

¶6            At the probation revocation hearing, Padilla denied he had voluntarily stopped participating in the sex offender treatment, and testified K.K. had dismissed him because, consistent with his *Alford* plea, he had refused to admit guilt for the actions underlying his convictions. K.K., however, testified he had not dismissed Padilla from group therapy because Padilla had refused to admit guilt, but because he "refused to do any work."

¶7            Although he denied violating the sex offender portion of the treatment term, Padilla admitted to violating the alcohol term, testing term, curfew term, and committing one of the polygraph violations. Padilla denied violating the park term and explained he drove by Thorpe Park on his way to and from work. Similarly, he testified the GPS tracking device was defective because "it wouldn't take a charge."

¶8            The superior court found Padilla had not violated the GPS term and had not failed to miss the two polygraph examinations he had challenged. The superior court found, however, that Padilla had violated the treatment term as well as the testing, alcohol, curfew, and park terms. The court revoked Padilla's probation and sentenced him to the

---

[1]Approximately one month earlier, Padilla had unsuccessfully requested the court to "change the location of counseling" because of conflicts with K.K.

presumptive term of five years' imprisonment on each count with the sentences to run consecutively.

## DISCUSSION

I.    Violation of Treatment Term

¶9          Padilla argues the superior court should not have revoked his probation because the State failed to prove he had willfully violated the treatment term.  In making this argument, Padilla contends that even though his *Alford* plea did not require him to admit guilt, that is, to admit he had sexually abused the victims, K.K. nevertheless dismissed him from treatment because he refused to do so.  Based on the same factual premise — that K.K. dismissed him from treatment because he refused to admit guilt — Padilla also argues the superior court failed to give him "fair notice" that his failure to admit guilt could be used to revoke his probation;[2] his dismissal from treatment and the revocation of his probation violated his Fifth Amendment right against self-incrimination; and, the State "violated the spirit of the plea agreement" by petitioning to revoke his probation when it knew sex offender treatment programs required participants to admit guilt, even though Padilla's *Alford* plea allowed him to "maintain his innocence."  We reject all of these arguments.

¶10         The State demonstrated by a preponderance of the evidence Padilla willfully violated the treatment term because he failed to participate in treatment, and not because he refused to admit guilt.  *See State v. Tatlow*, 231 Ariz. 34, 39, ¶ 15, 290 P.3d 228, 233 (App. 2012) (State must prove willful probation violation by preponderance of evidence).  Based on this evidence, the superior court did not abuse its discretion in revoking Padilla's probation.  *See id.* at 39-40, ¶ 15, 290 P.3d at 233-34 (appellate court views evidence in light most favorable to sustaining superior court's finding that probationer violated term of probation and will not reverse unless finding is "arbitrary and unsupported by any theory of the evidence") (citations omitted) (internal quotation marks omitted).

      A.    Sex Offender Therapy

¶11         Before addressing the evidence presented by the State at the revocation hearing, we acknowledge the inherent conflict created when a court accepts a defendant's *Alford* plea to a sexual offense and then requires

---

[2]Indeed, at Padilla's sentencing in 2010, the superior court told Padilla that his failure to admit guilt would not be considered a probation violation.

the defendant to participate in a sex offender treatment program as part of his or her probation. Although some courts have upheld probation revocations despite this conflict, *see, e.g.*, *Carroll v. Commonwealth*, 701 S.E.2d 414 (Va. 2010); *State ex rel. Warren v. Schwarz*, 579 N.W.2d 698 (Wis. 1998), others have not, *see People v. Walters*, 627 N.Y.S.2d 289 (N.Y. Crim. Ct. 1995). Given this inherent conflict and the difficulties caused by *Alford* pleas in cases alleging sexual offenses, before accepting an *Alford* plea in such a case, a superior court should consider whether the defendant will be able to fully participate in and successfully complete sex offender treatment and whether such a term of probation is appropriate.

¶12        As discussed above, at the probation revocation hearing, K.K. testified Padilla's failure to admit to his criminal sexual conduct was not the basis for dismissing him. Rather, K.K. dismissed Padilla for failing "to do any work," which K.K. said was "completely different than admitting guilt." The "work" Padilla refused to do included homework assignments and explaining why he failed a polygraph examination. K.K. also testified an important goal of sex offender therapy was the patient's empathy for the victim, regardless of whether the patient also admitted guilt. And, despite the severe sexual trauma experienced by the victims, Padilla consistently expressed no empathy for them.

¶13        Despite this evidence, Padilla points to evidence that K.K. dismissed him because he refused to "take ownership of his offense history" and was "in denial" regarding any "wrongdoing." K.K., however, testified Padilla had explained during therapy that the victims had told him someone else had engaged in inappropriate sexual conduct with them. When the participants in the therapy group asked Padilla why he did not report this to the police, he responded, "That was not my thing." K.K. testified, "Ownership is not just about guilt. It's about being present when things happen that are there . . . . It's just stating the fact, 'Yes. I was there, I was present, this happened.'" K.K. further testified that when people begin therapy, they may deny the criminal conduct, but eventually they "take some responsibility for . . . being in this situation here."

¶14        Based on this evidence, the superior court did not abuse its discretion in finding Padilla had willfully violated the treatment term and in revoking his probation.[3]

_____

        [3]Padilla argues the State should not have petitioned to revoke his probation because, although K.K. found him unsuitable for *group* therapy, he was suitable for *individual* therapy. The record contains no

B.      Polygraph Examinations

**¶15**      Padilla's probation officer testified that two of Padilla's polygraph examination results indicated deception.  Consequently, as part of its finding that Padilla had violated the treatment term, the court relied on these polygraph results.  Padilla argues the court abused its discretion in considering the polygraph results because they were unreliable and inaccurate.[4]

**¶16**      We review this argument for fundamental error because Padilla did not raise it in the superior court.  *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).  To obtain relief under fundamental error review, Padilla has the burden to show that error occurred, the error was fundamental, and he was prejudiced thereby.  *See id.* at 567-68, ¶¶ 20-22, 115 P.3d at 607-08.  Fundamental error is error that "goes to the foundation of his case, takes away a right that is essential to his defense,

---

evidence, however, that Padilla would have been a successful candidate for individual therapy.

[4]Padilla also asserts the superior court violated his due process rights because he was not given notice that deceptive polygraphs would be considered a probation violation.  Padilla has not sufficiently developed this argument or provided any supporting authority.  As a result, we will not address it.  Ariz. R. Crim. P. 31.13(c)(1)(vi) ("The appellant's brief shall include . . . [a]n argument which shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."); *State v. Moody,* 208 Ariz. 424, 452 n.9, ¶ 101, 94 P.3d 1119, 1147 n.9 (2004) ("In Arizona, opening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised.") (quoting *State v. Carver,* 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989)); *State v. Sanchez*, 200 Ariz. 163, 166, ¶ 8, 24 P.3d 610, 613 (App. 2001) (issue waived because defendant failed to develop argument in his brief).

Padilla also argues the probation term requiring him to participate in polygraph examinations violated his Fifth Amendment right against self-incrimination and was therefore unenforceable.  Even if we found merit in this argument, Padilla has not specified any questions the examiner required him to answer which implicated his right against self-incrimination.  We thus reject this argument.

and is of such magnitude that he could not have received a fair trial." *Id.* at 568, ¶ 24, 115 P.3d at 608.

**¶17** Evidence of polygraph examination results is per se inadmissible in criminal trials because of its unreliability. *State v. Perez*, 233 Ariz. 38, 43, ¶ 18, 308 P.3d 1189, 1194 (App. 2013). Probation revocation hearings, however, are not subject to the same evidentiary limitations of a criminal trial. *State v. Goodloe*, 107 Ariz. 141, 142, 483 P.2d 556, 557 (1971). Indeed, in *Goodloe*, our supreme court held polygraph results are admissible in a revocation proceeding "so long as there is not a delegation of the authority vested in the court by A.R.S. § 13-1657."[5] *Id.*

**¶18** Here, the superior court did not rely solely on Padilla's polygraph results in revoking his probation. Instead, the court made its decision based on Padilla's admissions and the testimony of K.K. and Padilla's probation officers, all of whom identified multiple probation violations. Given this evidence, the superior court did not commit fundamental error in relying on Padilla's polygraph results in deciding to revoke his probation.

II.     The Park Term

        A.      Constitutional Challenges

**¶19** As noted, the superior court found Padilla had violated the park term, which stated: "You shall not go to or loiter near schoolyards, parks, playgrounds, arcades, or other places primarily used by children under the age of 18 without written permission of your probation officer." Focusing on the word "parks" by itself and without the modifier, "primarily used by children under the age of 18," Padilla argues the park term was unconstitutionally vague. Although Padilla did not raise this argument in the superior court, he raises a constitutional issue, subject to our de novo review. *State v. Bocharski*, 218 Ariz. 476, 483, ¶ 17, 189 P.3d 403, 410 (2008).

**¶20** Properly construed, the park term did not prohibit Padilla from going to any park, but only those parks "primarily used by children." *See State v. Elmore*, 174 Ariz. 480, 483, 851 P.2d 105, 108 (App. 1992) ("Probation terms violate due process rights if a person of ordinary

_____

[5]Section 13-1657(B), repealed in 1978, *see* 1977 Ariz. Sess. Laws Ch. 142, § 36, is the historical equivalent of A.R.S. § 13-901(C), which authorizes the court to revoke a defendant's probation.

intelligence cannot understand what conduct is required or prohibited."). By forbidding access to a specified list of places, followed by the phrase "*other places* primarily used by children," the term sufficiently described the types of "parks" it prohibited Padilla from visiting. Specifically, the words "other places" clearly connect "parks" with the descriptive phrase "primarily used by children" such that a probationer of ordinary intelligence convicted of a sexual offense against children would understand he or she was prohibited from going to or loitering near parks primarily used by children. The park term is not unconstitutionally vague.

¶21　　　　　Padilla also argues the term is overbroad because it prohibited him from going to any park, regardless of its primary use. *See State v. Thompson*, 138 Ariz. 341, 345, 674 P.2d 895, 899 (App. 1983) ("A statute is overbroad when its language, given its normal meaning, is so broad that sanctions may apply to conduct which the state is not entitled to regulate."). Given that the term only prohibited Padilla from visiting parks primarily used by children, its scope was sufficiently limited to address the purposes of probation: promoting rehabilitation and protecting the public. *See* Ariz. R. Crim. P. 27.1 (court may impose probation conditions that promote rehabilitation); *Pima Cnty. Juv. Action No. J-20705-3*, 133 Ariz. 296, 297, 650 P.2d 1278, 1279 (App. 1982) (court has inherent power to impose probation terms that control a probationer's behavior "to attempt the rehabilitation of the [probationer] and to protect society from further [criminal] acts."). The park term was not, therefore, overbroad.

III.　　Violation of the Park Term: Sufficiency of the Evidence

¶22　　　　　Padilla argues the superior court's finding that he violated the park term was not supported by sufficient evidence. First, he argues his admission that he "drove past" Thorpe Park three times in one day did not support a finding of "going to" the park. We disagree.

¶23　　　　　According to GPS tracking, Padilla drove by Thorpe Park each time at a speed between five and seven miles-per-hour. The speed limit on the road Padilla traveled was 25 miles-per-hour. Although Padilla testified he drove past Thorpe Park to go to and from work more quickly, he did not explain why he drove by the park so slowly. Furthermore, Padilla's probation officer, after describing the location of Padilla's workplace, testified that Padilla had "no reason" to drive past Thorpe Park.

¶24　　　　　This evidence was probative of Padilla "going to" Thorpe Park. Further, his slow driving speed was probative of Padilla loitering near the park. *See* American Heritage Dictionary 1029 (4th ed. 2006) (defining "loiter," in part, as "[t]o proceed slowly or with many stops").

¶25        Second, Padilla argues the State did not present any evidence showing Thorpe Park is primarily used by children.  Because Padilla did not raise this argument in the superior court, we review for fundamental error.  At the revocation hearing, Padilla's probation officer explained Thorpe Park is adjacent to a school in a residential neighborhood and noted, "It's pretty fair [to say] it would be frequented by children."[6]  On appeal, Padilla does not argue this testimony—that Thorpe Park is "frequented by children"—is different from "primarily used by children."  Accordingly, reviewing for fundamental error, we reject this argument.

¶26        Thus, sufficient evidence supported the superior court's finding that Padilla violated the park term.

IV.    Bias of the Court

¶27        Padilla argues the superior court was biased against him and, accordingly, deprived him of a fair hearing.  To support this argument, Padilla highlights comments the court made when it questioned him and other witnesses during both the revocation hearing and disposition. Because Padilla failed to object to the court's comments at the hearing, we review for fundamental error.

¶28        In *Liteky v. United States*, the United States Supreme Court declared:

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge . . . [however,] they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

510 U.S. 540, 555, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474 (1994).

¶29        Based on our review of the record, the judge treated Padilla with disrespect.  The court's questioning of Padilla was sarcastic and

---

[6]Padilla relies on a description of Thorpe Park from a city website as evidence it is not primarily used by children.  This description, however, is not in the record on appeal and thus we will not consider it.  *See State v. Schackart*, 190 Ariz. 238, 247, 947 P.2d 315, 324 (1997); Ariz. R. Crim. P. 31.8 (describing record on appeal).

disrespectful. The judge's conduct failed to comport with Rule 1.2 of the Arizona Code of Judicial Conduct, which states, "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety."

¶30          We cannot conclude, however, that the judge exhibited "such a high degree of favoritism or antagonism as to make fair judgment impossible." *See Liteky* at 555-56, 114 S. Ct. at 1157 ("*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as . . . judges, sometimes display.").

¶31          Furthermore, Padilla has not carried his burden under fundamental error review to establish the judge's improper comments were prejudicial. Nothing in the record indicates that had the judge presiding over the revocation hearing not made the improper remarks, or had another judge presided, the result would be any different. *See State v. Munninger*, 213 Ariz. 393, 397, ¶ 14, 142 P.3d 701, 705 (App. 2006) (prejudice must be shown in the record and may not be based solely on speculation). Indeed, the judge found Padilla had not violated the GPS term or the treatment term as to two of the three missed polygraph examinations. *See supra* ¶ 8. Consequently, although we agree with Padilla the judge treated him with disrespect, we see no fundamental, prejudicial error.

V.          Consecutive Sentencing

¶32          Padilla argues the superior court's imposition of consecutive prison terms was illegal and void as contrary to public policy because Arizona law does not presume sentences should run consecutively. Padilla also argues the stipulation in the plea agreement that required consecutive sentences violated Arizona Rule of Criminal Procedure 17.4(d), and, therefore, prohibited the superior court from determining whether the stipulation was appropriate "at the time of sentencing." We disagree with these arguments.

¶33          Although Padilla is correct in arguing A.R.S. § 13-711 does not contain a presumption that sentences should run consecutively, the statute does not forbid such sentencing. *See State v. Ward*, 200 Ariz. 387, 388-89, ¶¶ 3-4, 26 P.3d 1158, 1159-60 (App. 2001) (predecessor statute to § 13-711 does not create a presumption for consecutive or concurrent sentences); *see also* 2008 Ariz. Sess. Laws, ch. 301, § 27 (2d Reg. Sess.) (renumbering § 13-708 to § 13-711). Furthermore, Padilla pleaded guilty to engaging in sexual contact

with two different victims; thus, consecutive sentences were entirely proper.[7] *See, e.g.,* S*tate v. Riley,* 196 Ariz. 40, 46–47, ¶ 21, 992 P.2d 1135, 1141–42 (App. 1999) (affirming consecutive sentences for offenses committed against multiple victims).

¶34 The stipulation to consecutive sentences also did not "usurp[] the responsibility" of the superior court, as Padilla argues. "The court shall not be bound by any provision in the plea agreement regarding the sentence or the term and conditions of probation to be imposed, if, after accepting the agreement and reviewing a presentence report, it rejects the provision as inappropriate." Ariz. R. Crim. P. 17.4(d). Consistent with Rule 17.4(d), the parties' stipulation to consecutive sentences expressly stated it was subject to court approval. Accordingly, the consecutive sentence stipulation did not prohibit the superior court at the disposition hearing from determining its propriety.

## CONCLUSION

¶35 For the foregoing reasons, we affirm Padilla's probation revocation and resulting prison sentences.

**K E S S L E R**, J., Specially Concurring:

¶36 I concur with the majority's decision, but write separately to emphasize my views on the sufficiency of the evidence that Padilla violated his probation when he drove by a park. As the majority mentioned, *see supra* ¶ 25, the evidence showed that minors frequented the park and the park was next to a school. There is a distinct difference, however, between minors frequenting a place and the place being primarily used by minors.

---

[7]Padilla relies on *State v. Solano*, 150 Ariz. 423, 724 P.2d 42 (App. 1985), to support his argument that the stipulation to consecutive sentencing was unlawful and contrary to public policy. Our supreme court, however, vacated that decision. *State v. Solano*, 150 Ariz. 398, 724 P.2d 17 (1986). Also, *State v. Baum*, 182 Ariz. 138, 893 P.2d 1301 (App. 1995), another case Padilla cites in support, is inapposite. There, we held that the revocation court abused its sentencing discretion by imposing an aggravated prison sentence based on the defendant's probation violations, rather than sentencing him for the original crime. *Id.* at 140, 893 P.2d at 1303.

Nevertheless, we must review the evidence in the light most favorable to affirm, *State v. Tatlow*, 231 Ariz. 34, 39-40, ¶ 15, 290 P.3d 228, 233-34 (App. 2012), and give deference to the judge acting as factfinder. While I might not have reached the same conclusion as the trial judge, the facts that children frequent a park next to a school combined with Padilla not disputing that the park was primarily used by minors during the revocation hearing, makes me conclude that there was no clear error on that issue.



Ruth A. Willingham · Clerk of the Court
FILED: jt