NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MARY ROSE ARELLANO, *Petitioner/Appellant*,

*v.*

RICARDO MACIAS NUNEZ, *Respondent/Appellee*.

No. 1 CA-CV 25-0469 FC

FILED 02-26-2026

Appeal from the Superior Court in Yuma County
No. S1400DO202200389
The Honorable Eliza Johnson, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Mary Rose Arellano, Yuma
*Petitioner/Appellant*

Ricardo Macias Nunez, Yuma
*Respondent/Appellee*

---

## MEMORANDUM DECISION

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined.

---

**P A T O N**, Judge:

¶1        Mary Rose Arellano ("Mother") appeals the superior court's order granting Ricardo Macias Nunez ("Father") sole legal decision-making authority for the parties' children and terminating his child support obligation.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother and Father have two minor children together.  In 2022, Father petitioned to establish legal decision-making authority, parenting time, and child support.  After a hearing, the court ordered joint legal decision-making authority and parenting time for Father during the week, and for Mother on the weekends; Father would pay Mother $233 per month in child support.

¶3        The following year, Father petitioned to modify legal decision-making authority, parenting time, and child support.  He alleged Mother had not exercised her parenting time since the previous hearing, she did not have stable housing, and the children did not wish to see her.  He asked the court to grant him sole legal decision-making authority, limit Mother's parenting time, and discontinue his child support obligation.

¶4        Mother admitted she had temporarily allowed the children to remain primarily in Father's care due to her housing instability but denied she had ceded her right to parenting time.  She opposed the petition and asked the court to continue the parties' joint legal decision-making authority, make her the primary residential parent with parenting time during the week, and enforce the current child support order.

¶5        After a hearing, the superior court awarded Father sole legal decision-making authority, continued his weekday parenting time, and discontinued his child support obligation.  It ordered that Mother could exercise parenting time on the weekends if the children agreed to see her.

**¶6**        Mother timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(1).

## DISCUSSION

**¶7**        We review the superior court's rulings on legal decision-making authority and parenting time for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). A court abuses its discretion when it commits an error of law in drawing a discretionary conclusion or when no competent evidence supports its decision. *Id.*

**¶8**        Arizona courts determine legal decision-making and parenting time "in accordance with the best interests of the child." A.R.S. § 25-403(A). To do so, the court must consider all relevant factors bearing on the child's well-being. *See, e.g.*, A.R.S. §§ 25-403(A)(1)-(11), -403.01(B)(1)-(4). As required in a contested case, the superior court made express findings "about all relevant factors and the reasons for which the decision is in the best interests of the child." A.R.S. § 25-403(B). Mother does not directly challenge the sufficiency of those findings but argues that the superior court violated her rights to due process and equal protection under the law, denied her access to the courts, and violated her federal rights. "We review issues of constitutional law de novo." *State v. Coleman*, 241 Ariz. 190, 192, ¶ 6 (App. 2016).

**¶9**        Mother argues Father conceded the constitutional issues she raises in her opening brief by failing to address them in his answering brief. Because this matter involves a child's best interests, we do not treat Father's lack of a substantive response on these issues as a confession of error. *Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (1966).

## I.        Due Process / Equal Protection

**¶10**        Mother raises several claims that the superior court proceedings contained "coordinated procedural misconduct" that violated her due process and equal protection rights.

### A.        Ex Parte Communications

**¶11**        Mother contends the superior court engaged in a "pattern of undisclosed ex parte communications" that requires reversal of the modification order. The only evidence she cites, however, is her statement to the superior court that she called the court and told an unidentified person about her inability to pay for a court-ordered drug test. She alleges

this person advised her to "borrow money from friends or family" to pay for the testing.

**¶12** Accepting Mother's testimony as true, this single conversation with an unidentified court employee is not evidence of improper ex parte communications, let alone a pattern of substantive communications that influenced central case determinations, as Mother alleges. The Arizona Code of Judicial Conduct prohibits judges from having ex parte communications. *See* Ariz. R. Sup. Ct. 81, Code of Jud. Conduct 2.9. But the relevant authorities permit a court's clerk's office employees to give information about procedural options. *See* Ariz. Code of Jud. Admin. § 1-308(D). And our supreme court has held that a new trial based on ex parte communications is required only if the communication creates the appearance of bias, impropriety, or favoritism, such that it "threaten[s] the integrity of the judicial process," and the person asserting error was prejudiced. *See McElhanon v. Hing*, 151 Ariz. 403, 411-413 (1986). There is no evidence that the superior court judge here conducted ex parte communications and gained personal knowledge of disputed facts requiring disqualification.

## B. Evidence Suppression

**¶13** Mother alleges the superior court erred by ignoring her documentary evidence while accepting Father's allegations without requiring corroborating evidence beyond his own testimony.

**¶14** Mother does not specify what evidence she submitted that she believes the superior court "systematically ignore[d]." The record shows that the court accepted all of Mother's exhibits in evidence and did not strike any of her testimony. We assume that the court considered all relevant admitted evidence. *See Fuentes v. Fuentes*, 209 Ariz. 51, 55, ¶ 18 (App. 2004).

**¶15** Further, Mother's argument that the superior court erred by accepting Father's testimony without any "corroborating" documentary evidence is unavailing. We defer to the superior court's determinations of the credibility of witnesses and the weight given to their testimony. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998). The court was entitled to consider Father's testimony in determining how to resolve the petition to modify. We will not reweigh the evidence or second-guess the court's credibility determinations. *Id.*

### C.  Disparate Courtroom Treatment

¶16     Mother contends the superior court favored Father at trial by allowing him unlimited time for uninterrupted testimony, fully considering his objections, and relying on events prior to the initial legal decision-making and parenting time order; whereas the court interrupted her testimony, perfunctorily dismissed her objections, and did not allow her to present evidence of events prior to the initial order.  The court has broad discretion to control all proceedings, including the presentation of witnesses and evidence, *Volk v. Brame*, 235 Ariz. 462, 468, ¶¶ 19-20 (App. 2014); Ariz. R. Evid. 611(a), and we generally do not substitute our judgment on such matters if reasonable, *Findlay v. Lewis*, 172 Ariz. 343, 346 (1992).

¶17     The only occurrence of the alleged disparate treatment Mother cites is the superior court's statement to both parties at the start of the 2025 hearing that events prior to the 2023 hearing were presumed to have been resolved in the prior order.  Because the court was considering Father's petition to modify the 2023 order, it was appropriate for the court to instruct the parties that their evidence should address any changes in the parties' circumstances after the date of that order.  *Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020) (superior court must find a change in circumstances materially affecting the welfare of a child before it may determine whether modification of legal decision-making and parenting time provisions are in the child's best interests).  Mother does not explain what evidence this statement prevented her from submitting to the court or how its exclusion prejudiced her case.  *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 23 (App. 2019) (noting an appellate court "will affirm the family court's admission of evidence absent an abuse of discretion and resulting prejudice or a mistake of law").  Accordingly, we find no error.

### D.  Discovery Violations

¶18     Mother argues the superior court failed to address her request that it enforce the discovery rules and require Father to submit relevant documents and evidence, resulting in an unfair proceeding and denial of her right to due process.

¶19     On the first hearing day, Mother told the superior court that Father had not produced any discovery, or "provided any concrete evidence that substantiates his claims against" her and asked the court to require him to produce documents and other evidence to support his allegations.  The court explained that there was a formal process for Mother

to request discovery from Father and directed her to the rules of procedure. It granted Mother's request for additional time to engage in discovery and scheduled a final hearing date nearly two months later. When the hearing resumed, Mother testified that Father had not presented her with "any evidence as to his accusations" but did not show that she had requested any discovery from him. The court informed Mother that the parties' testimony and submitted documents were evidence that it could consider. We reject Mother's argument that the court did not address her request for discovery.

¶20 Further, Father was not required to submit documents or other evidence to corroborate his testimony, and it was for the superior court to determine whether his testimony without such evidence was credible. *Gutierrez*, 193 Ariz. at 347, ¶ 13. We find no error.

### E. Access to Courts

¶21 Mother next contends that the superior court violated her due process and equal protection rights by denying her access to the court based on her inability to pay court fees and refusing to provide her procedural information. We do not consider Mother's argument to the extent that it relates to an incident with the parties' child at school several years before the court entered the modification order.

¶22 In support of her argument, Mother primarily relies on *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996), a case in which the United States Supreme Court held that statutes requiring a parent to pay record preparation fees before she could appeal the State's termination of her parental rights violated the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution. But this is a family law case, not a termination of parental rights case. And *M.L.B.* did not require that a party receive free transcripts or other materials for appellate review in routine family law cases. *Id.* at 114 ("[A] constitutional requirement to waive court fees in civil cases is the exception, not the general rule.") (citing *United States v. Kras*, 409 U.S. 434, 441-43 (1973)).

### F. Substance Abuse Testing

¶23 Finally, Mother contends that the superior court violated her federal statutory rights by ordering her to undergo drug testing and basing its custody determination on her failure to complete the ordered testing.

¶24 While Father's petition to establish legal decision-making authority and parenting time was pending in 2023, he asked the court to order Mother to submit to a drug test. At the 2023 hearing, he testified that

Mother had a history of illegal drug use and that he suspected she was using drugs again because she had been neglecting the parties' children and living with them in a "dope house." The court ordered both parties to undergo a drug urinalysis test no later than the following day and to file the results with the court. Mother did not submit any test results to the court, and the court inferred that Mother was abusing illegal substances. Mother did not appeal that ruling.

¶25 At the 2025 hearing on Father's request to modify legal decision-making authority and parenting time, Father testified he suspected Mother was using drugs because of his observations when he picked up the children and because Mother had not completed the court-ordered drug test in 2023. Mother denied having a history of drug use, even though she had admitted at the 2023 hearing that she had used methamphetamine in the past. She claimed she did not take the court-ordered drug test in 2023 because she could not afford it. The court ordered Mother to comply with that prior order and directed that the court would pay the cost of the testing. Mother still did not complete the test, first claiming she was unaware of the court's order, and then challenging the court's authority to order her to complete drug testing.

¶26 On appeal, Mother argues the superior court violated her rights under federal law by ordering her to undergo drug testing without a sufficient evidentiary basis and by basing its legal decision-making and parenting time orders on her failure to complete the test. She relies on 42 U.S.C. § 290dd-2(a), which establishes federal confidentiality protections for records related to substance abuse treatment and rehabilitation programs that receive federal assistance. *See State v. Tatlow*, 231 Ariz. 34, 37, ¶ 7 (App. 2012). There is no evidence that the superior court received or considered any such records concerning Mother.

¶27 Mother also cites the Americans with Disabilities Act, a federal civil rights law that prohibits discrimination against individuals with disabilities. 42 U.S.C. § 12101 *et seq.* She appears to argue that because the Act's protections extend to persons recovering from drug or alcohol addiction, *Pacific Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1157 (9th Cir. 2013), the superior court could not consider her "historical" drug use (which she characterizes as a substance use disorder) as part of its best-interests findings. Importantly, however, the Act specifically excludes persons "currently engaging in the illegal use of drugs" from its protections. 42 U.S.C. § 12114(a); *see also* 42 U.S.C. § 12210(a). The record shows that the superior court did not consider

Mother's "historical" drug use but drew a negative inference from her refusal to complete a drug test and file the results with the court.

**¶28** When determining legal decision-making or parenting time, Arizona law requires the superior court to consider both parents' physical and mental health as part of its analysis of the children's best interests. A.R.S. § 25-403(A)(5). And if the court determines a parent has abused drugs within the twelve months prior to the petition being filed, there is a rebuttable presumption that sole or joint legal decision-making by that parent is not in the child's best interests. A.R.S. § 25-403.04(A); *cf. Montoya v. Superior Court*, 173 Ariz. 129, 131 (App. 1992) (noting that the superior court may draw a negative inference from a party's refusal to answer questions about drug use).

**¶29** Based on Mother's refusal to complete a drug test and file the results with the court, the superior court made a negative inference about Mother's continued drug use. It nevertheless found that the children were not especially young and vulnerable, and Mother could exercise weekend parenting time with them. The court considered these findings, along with the other required best-interests findings, in reaching its legal decision-making and parenting time decision. The weight to assign Mother's repeated failures to submit to the court-ordered drug test is the sole province of the superior court. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009) ("Our duty on review does not include re-weighing conflicting evidence or redetermining the preponderance of the evidence."). We "affirm the trial court's ruling if substantial evidence supports it," *id.*, and find no abuse of discretion.

**¶30** Mother nevertheless maintains that the superior court did not have a sufficient evidentiary basis to order her to undergo drug testing because she denied current drug use, there was no evidence she had been arrested on criminal charges related to drug use, no reports from schools or social services indicating drug use, no evidence of child neglect or endangerment, and "no observed behaviors or witness testimony indicating current impairment affecting parental capacity." We do not consider Mother's contention that the superior court's 2023 order for drug testing was unsupported because Mother did not timely appeal that ruling. ARCAP 9(a) (stating that a party has 30 days from the entry of judgment to file an appeal).

**¶31** In a family case such as this, the court may order substance abuse screening when there is an *allegation* that a party has abused drugs. Ariz. R. Fam. Law P. 95(c). Father testified that he suspected Mother was

using illegal drugs based, in part, on his observations when he picked up the children. The court therefore acted within its authority to order Mother to undergo testing to ascertain whether she was currently using illegal drugs.

### G.    Mother's Additional Arguments

**¶32**        Mother raises additional arguments but fails to adequately develop them. Arguments which do not contain supporting reasons and proper citations are waived on review. *Stafford v. Burns*, 241 Ariz. 474, 483, ¶ 34 (App. 2017) (party waives an issue on appeal if he does not develop and support it); *see also* ARCAP 13(a)(7)(A) (requiring an opening brief to contain "contentions concerning each issue presented for review, with supporting reasons for each contention . . . and appropriate references to the portions of the record on which the appellant relies").

**¶33**        To start, Mother argues that the superior court consistently received and considered Father's motions without ensuring Mother had notice or an opportunity to respond. Mother also claims the superior court subjected her evidence to heightened scrutiny while accepting Father's testimony as presumptively credible but cites nothing to support her argument. Therefore, her argument is waived, and we do not address it. *Stafford*, 241 Ariz. at 483, ¶ 34; ARCAP 13(a)(7)(A).

**¶34**        Additionally, Mother argues that the superior court required filing fees that she could not afford to pay and refused to provide her procedural information. She does not specify what filing fees the court required her to pay and the record contains an order deferring Mother's filing fees based on her financial circumstances. Similarly, although the court denied Mother's request that it produce transcripts without cost, it deferred the transcript fees based on her financial circumstances. Mother also does not indicate what procedural information she believes the superior court was required and failed to give her. Because Mother did not develop these arguments, they are waived. *Stafford*, 241 Ariz. at 483, ¶ 34; ARCAP 13(a)(7)(A).

**¶35**        Finally, Mother alleges that multiple state judicial personnel coordinated systematic violations of her fundamental rights, and the superior court refused to grant legal protections that would have allowed safe schooling, effectively forcing her into homeschooling as the only viable protective option, and then used that action to terminate custody. Mother cites nothing from the record to support her arguments. They are therefore

waived, and we will not consider them. *Stafford*, 241 Ariz. at 483 ¶ 34; ARCAP 13(a)(7)(A).

## CONCLUSION

**¶36** We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR