501 P.2d 14

The STATE of Arizona, Appellee,

v.

Joseph Madrid FIMBRES, Appellant.

No. 2362.

Supreme Court of Arizona,
In Division.

Sept. 21, 1972.

Gary K. Nelson, Atty. Gen., by William P. Dixon and John S. O'Dowd, Asst. Attys. Gen., Phoenix, for appellee.

S. Jeffrey Minker, Tucson, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal by the defendant from the revocation of his probation (§ 13–1657 A.R.S.) and a sentence of from 6 to 7 years for the crime of armed robbery [§§ 13–641 and 13–643, subsec. B, A.R.S.].

We are called upon to determine whether the court violated the defendant's constitutional privilege against self-incrimination when it allowed the probation officer to testify as to statements made to him by the defendant.

The facts necessary for a determination of the matter on appeal are as follows. The defendant was adjudged guilty of the crime of robbery on 24 April 1970 after a jury trial and verdict. Imposition of sentence was suspended and he was placed on probation for 5 years, "conditioned, however, on good behavior and on compliance with such other conditions of probation as the Court may designate." The court imposed "Additional Conditions" and ordered:

"1. That you violate no law.

"2. That you make reports to and carry out the orders of the Probation Officer."

On 10 March 1971 a petition to revoke probation was filed by defendant's probation officer which stated:

" * * * The subject has failed to comply with the conditions of his probation in the following manner:

"1. The subject participated in a burglary of a residence and received stolen property on March 5, 1971.

\* \* \* \* \* \*"

A hearing was held upon the petition at which time defendant was represented by counsel. At the time of the hearing, defendant had been arrested and charged with the burglary but had not been convicted. The defendant testified in his own behalf. For example:

"THE COURT: This Moreno that you were talking about, was he involved in this burglary too?

"A  I don't know.

"MR. MINKER: I object to that, your Honor.

"THE COURT: All right. I am talking about the man that it is alleged here is. That is what I was trying to find out.

"MR. MINKER: I would advise the defendant not to answer that question.

"THE COURT: All right. I have no further questions. I will ask Mr. Ryerse to be sworn."

The probation officer (Mr. Ryerse) testified in part as follows:

"Q  As to the first one, to the burglary of a residence and receiving stolen property, were you notified that the defendant had been arrested for this?

"A  I actually noticed it in the newspaper, that he had been arrested for a felony burglary on March 5, 1971.

"Q  Concerning this, did you have a conversation with the defendant?

"A  Yes, your Honor.

"MR. MINKER: May I ask a question on voir dire?

"THE COURT: No, not at this time. This is a revocation of probation hearing. This is not a trial and we don't follow the same rules of evidence.

"MR. MINKER: May I make an objection for the record?

"THE COURT: You may.

"MR. MINKER: I will object to any conversations Mr. Ryerse had with the defendant concerning a burglary on March 5, 1971 unless there is a show-ing that he was advised of his Constitutional rights under the *Miranda* case.

"THE COURT: Objection overruled.

"A  The defendant came into my office on the 10th of March and told me that he had gotten into trouble again. I asked him what the nature of the trouble was and he explained to me that he did get picked up by these two other individuals, Moreno and Sepulveda (phonetic) if that is the way you pronounce his name, and that they took him to this address and that they did this thing, that they burglarized a house. He didn't go into great detail. He said he did it and the only reason he did it was because he didn't want them to think that he was chicken."

The probation officer also stated:

"A  His performance on probation has been very marginal, and I felt that he needed to make some positive move or to do something to keep himself on probation; in other words, to put it bluntly, he was on the verge of revocation of his probation since about the second month he went on probation, as far as I was concerned.

"Q  You said he should make a move to help himself out. Would going to work for Sundt Construction Company be that type of move?

"A  Well, no. I continuously · receive reports from his wife, his family, his neighbors, and people who were sent to prison or people with whom I came in contact during my investigation of presentence reports, and they say, they told me various alleged things which he was doing which indicated he was associating with improper people, and so on."

It is the contention of the attorney for the defendant that defendant's privilege against self-incrimination was violated when the probation officer was allowed to testify as to statements made to him by the defendant. Although the attorney for

the defendant cites some cases concerning the privilege against self-incrimination, all of those cited are pre-arrest, pre-conviction, and pre-probation cases. He has cited no case and we have found none which hold that the rights of a defendant-probationer are violated when the probation officer is allowed to testify at a revocation of probation hearing.

We agree with the Maryland court that:

"Probation is a matter of grace, which aside from being an act of clemency extended to one who has committed a crime, is in substance and effect a bargain made by the people, through legislation and the courts, with the malefactor that he may be free as long as he conducts himself in a manner consonant with established communal standards and the safety of society. It offers the young or unhardened offender an opportunity to rehabilitate himself without confinement under the tutelage of a probation officer and there may be attached to the opportunity the condition that it may be ended, if the court is reasonably persuaded, by knowledge of facts, even if obtained more informally than the rules of evidence would permit it to be obtained in a trial, that it should be. Probation is a personal privilege of which the grantee may not be deprived arbitrarily or capriciously, but if one charged with breach of probation is given notice of the charges of violation of the conditions and the opportunity to answer or explain the facts which have come to the knowledge of the judge, even though not in the manner required by the rules of evidence, and the facts justify revocation, the act of revocation is not arbitrary or capricious." Scott v. State, 238 Md. 265, 275, 208 A.2d 575, 580 (1965).

Suspension of sentence and the granting of probation is statutory in Arizona, § 13–1657 A.R.S., which reads in part as follows:

"1. The court may suspend the imposing of sentence and may direct that the suspension continue for such period of time, not exceeding the maximum term of sentence which may be imposed, and upon such terms and conditions as the court determines, and shall place such person on probation, under the charge and supervision of the probation officer of the court during such suspension. One of the conditions imposed may be incarceration in the county jail for a specified period not to exceed one year."

Requiring the probationer to report to a probation officer is the only practical way that a system of probation can be maintained by the court which, in the case of probation, still retains jurisdiction over the defendant. To hold as defendant would suggest, that the probation officer may not discuss with the court or testify at a revocation of probation hearing as to the statements made by the defendant would completely destroy the system of probation which is just as much for the benefit of the defendant as it is for society as a whole. The probation officer is the agent of the court and the confidential nature of the conversation between the probation officer and the probationer is one for the court to control. There is no privilege against disclosure which is owned or controlled by the probationer.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, J., concur.