542 P.2d 1115
**STATE of Arizona, Appellee,**
v.
**Phillip Loyd SMITH, Appellant.**
**No. 2963–2.**

Supreme Court of Arizona,
In Banc.
Nov. 26, 1975.

Rehearing Denied Dec. 23, 1975.

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen. by R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by H. Allen Gerhardt, Jr., Deputy Public Defender, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

Appellant Phillip Loyd Smith pled guilty on December 26, 1972 to a charge of illegally selling marijuana. On April 2, 1973, the trial court deferred sentencing and placed him on probation for five years. Subsequently, at a probation revocation hearing held on March 18, 1974, it was determined that he had violated the conditions of his probation. The trial court reinstated probation but also, pursuant to A.R.S. § 13–1657, sentenced the defendant to one year in the Maricopa County Jail. Charges were later filed against the appellant by his probation officer, alleging that thereafter he used heroin while confined in the county jail under the March 18, 1974 order. On June 7, 1974, a further revocation hearing was held on those charges. The Superior Court found that the terms of probation had been violated, revoked appellant's probation, and sentenced him to not less than five nor more than ten years in the Arizona State Prison. From this June 7, 1974 revocation of his probation, appellant appeals.

The trial court found that appellant had violated terms one and three of the probation conditions originally imposed on April 2, 1973, by failing to conduct himself as a law-abiding citizen and having narcotics or dangerous drugs in his possession, both grounds seemingly based on the same evidence. The evidence in part consisted of the testimony of Thomas P. McBreen, a Maricopa County Deputy Sheriff, and of Gerald LaFevre, an adult probation officer. McBreen testified that he questioned the appellant in the county jail in his, McBreen's, office about the use of drugs, and that appellant made certain admissions that he had, in fact, used heroin while in the county jail. No *Miranda* warnings were given by Deputy McBreen prior to questioning. It is argued that the lack of these warnings renders the testimony inadmissible. We agree.

*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966) held that statements made to police during custodial interrogations cannot be admitted into evidence in a criminal trial unless the defendant has been adequately warned about his rights prior to questioning. It is clear that Deputy McBreen's testimony would not have been admissible in a criminal trial for possession of heroin because of the noncompliance with *Miranda*. Resolution of

the issue of its admissibility in appellant's probation revocation hearing rests on the comparative purposes underlying the *Miranda* decision and the nature of probation and probation revocation. That is, can it be said that there are such significant differences between a criminal trial and probation revocation that evidence inadmissible under *Miranda* in the former can be admitted in the latter?

The inherent intimidating and subduing effects of being in custody, isolated in a police-dominated atmosphere, and the application of psychological and, less commonly, physical coercion and trickery, led the Court to formulate its four-point warning.[1] To insure that statements made during custodial interrogations are truly voluntary, the Supreme Court of the United States held such statements inadmissible in criminal trials unless it is shown that the warnings were given prior to questioning.

■ The Supreme Court had an opportunity to review its *Miranda* decision in *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). There, admissions obtained in violation of *Miranda* were held admissible for impeachment purposes where the defendant took the stand and gave testimony contrary to what he had told the police. The Court quoted from a previous case, *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), that:

" 'It is one thing to say that the Government cannot make an *affirmative* use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage . . . .' " 401 U.S. at 224, 91 S.Ct. at 645, 28 L.Ed.2d at 4. (Emphasis supplied)

There being no contention that the "trustworthiness of the evidence [did not] satisf[y] legal standards," *supra*, the Court permitted its use as impeachment. Thus, statements, made by defendants while in custody, without the benefit of *Miranda* warnings, are not necessarily unreliable, but to insure that they are made as a matter of free choice, the state cannot affirmatively use such statements without a showing that the warnings were given.

■ *Miranda* cannot be read as being limited in application to criminal trials. In *Miranda* the Court gave little attention to the admissibility question. The cases before it involved use of the evidence at criminal trials, so the exclusionary rule need not have been extended further. The concern was that statements made in custodial interrogations not be the product of improper influences but be a matter of the defendant's free choice. We think this principle applies in appellant's case to the same extent as it would if he had been tried for heroin possession.

Further, the language from *Miranda* supports its application to the facts of this case. The Supreme Court said:

"The privilege [against self-incrimination] was elevated to constitutional status and has always been 'as broad as the mischief against which it seeks to guard.'

\* \* \* \* \* \*

In this Court, the privilege has consistently been accorded a liberal construction.

\* \* \* \* \* \*

\* \* \* Without the protections flowing from adequate warnings and the rights of counsel, 'all the careful safeguards erected around the giving of testimony, whether by an accused or any other witness, would become empty formalities in a procedure where the most compelling possible evidence of guilt, a

---

1. The four-point warning to be given before any questioning is that the defendant has a right to remain silent, that any statement he does make may be used as evidence against

him, that he has a right to the presence of an attorney, and that if he cannot afford one, one will be appointed for him.

confession, would have already been obtained at the unsupervised pleasure of the police.' . . .

Today, then, there can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." 384 U.S. at 459–61, 466–67, 86 S.Ct. at 1620, 1624, 16 L.Ed.2d at 715–16, 719.

 The use of such evidence by the state here can only be classified as affirmative. The concern with voluntariness is in no way removed by the fact that appellant's statements were to be used in a probation revocation hearing. They were, in fact, admissions to a criminal offense. Nor do the purposes and philosophy of probation and probation revocation dictate a different result. Probation is a matter of legislative grace. It is a sentencing alternative which a court may use in its sound judicial discretion when the rehabilitation of the defendant can be accomplished with restrictive freedom rather than imprisonment. The court can surround probation with restrictions and requirements which a defendant must follow to retain his probationary status. Revocation, and consequential loss of freedom, is considered when charges are made that one or more of the conditions of probation have been violated. The court's concern at a revocation hearing is primarily to determine whether probation is still an effective means of rehabilitation and a sufficient deterrent against future crime. Revocation hearings are flexible and not subject to the same rules of evidence and procedure as govern criminal trials. It is enough for

the trial court to have a " 'reason to believe' that the individual is 'violating the conditions of his probation or engaging in criminal practices' " to revoke his probation. *State v. Bates,* 111 Ariz. 202, 526 P. 2d 1054 (1974).

In one important aspect this case is unlike *State v. Fimbres,* 108 Ariz. 430, 501 P.2d 14 (1972), cited by the State. In *Fimbres,* we held that the failure of a probation officer to give *Miranda* warnings to a probationer did not make such statements inadmissible. The statements were not made to a police officer. The continuous and repeated contact that probation officers have with their probationers as part of the administration of the system and conditions of probation necessitated the result in that case. To require the warnings in that case clearly would be detrimental to the administration of the probation system.

 The State argues that probation is a matter of grace, not of right, but it is to be recognized that constitutional rights cannot be held inapplicable merely by labeling a proceeding as a privilege. *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S. Ct. 2593, 2601, 33 L.Ed.2d 484, 494 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656, 662 (1973). And the State cites *Gagnon v. Scarpelli* for the proposition that there are distinctions between criminal trials and revocation hearings and argues that one distinction is the applicability of *Miranda.* In *Gagnon,* the Supreme Court applied the due process requirements it held applicable to parole revocation in *Morrissey, supra,* to probation revocations.[2] In *Morrissey,* the Court stated:

" * * * the revocation of parole is not part of a criminal prosecution and

---

2. The requirements of due process delineated in *Morrissey* and *Gagnon* were that two hearings must be provided. The first is to be in the nature of a preliminary hearing to determine if probable cause exists to believe that the defendant has violated his probation. The second is to be a more comprehensive hearing where the actual decision of whether probation is to be revoked is made. In addition the defendant is to be provided: (a) written notice of the claimed violation of probation; (b) disclosure of the evidence against him; (c) an opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hear-

thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." 408 U.S. at 480, 92 S.Ct. at 2600, 33 L.Ed.2d at 494.

and:

"We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499.

"Petitioner does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one. Probation revocation, like parole revocation, is not a stage of a criminal prosecution * * *." 411 U.S. at 782, 93 S.Ct. at 1759–60, 36 L.Ed.2d at 661.

■ However, that the "full panoply of rights" may not apply to probationers does not necessarily diminish the Fifth Amendment right as formulated in *Miranda*. While the rules of evidence do not strictly apply to revocation hearings, the holding in *Miranda* must be recognized as an expression of a substantive constitutional principle.

Six courts have considered, in some context, the applicability of *Miranda* to revocation proceedings. *Fimbres, supra; United States v. Johnson*, 455 F.2d 932 (5th Cir. 1972), *cert. denied*, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972); *State v. Johnson*, 9 Wash.App. 766, 514 P.2d 1073 (1973), and *People v. W.*, 31 A.D.2d 163, 295 N.Y.S.2d 767 (1968), *aff'd*, 24 N. Y.2d 732, 302 N.Y.S.2d 260, 249 N.E.2d 882 (1969), are all distinguishable as involving testimony from probation officers concerning probationers' admissions and not testimony from police officers.

Those holdings which support the State's position are *Commonwealth v. Davis*, 234 Pa.Super. 31, 336 A.2d 616 (1975); *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973), and *In re Martinez*, 1 Cal.3d 641, 83 Cal.Rptr. 382, 463 P.2d 734 (1970), *cert. denied*, 400 U.S. 851, 91 S.Ct. 71, 27 L.Ed.2d 88 (1971). *But see Biddy v. State*, 501 S.W.2d 104, (Tex.Cr.App.1973). They express the view that deterrence of overzealous police activity, the purpose behind the exclusionary rule, is adequately accomplished by suppressing evidence solely at criminal trials. But, we think, the police can subvert the holding and requirements of *Miranda* by having the defendant imprisoned by means of the revocation process rather than by a criminal trial with evidence of admissions which would not support a conviction at such a trial. In the present case they were obtained while appellant was in custody and in jail surroundings, in themselves coercive circumstances. The admissions might not have been obtained if the *Miranda* warnings had been given.

The American Bar Association has noted:

"Relaxation of rules of admissibility of evidence, the absence of a jury, a lesser burden of proof—factors such as these can lead to an abuse of the proceeding by basing revocation upon a new criminal offense when the offense could not be proved in an ordinary criminal trial." ABA Standards Relating to Probation, at 63 (1970).

■ Dissents were filed in *Martinez, supra,* and *Kates, supra*. They express concern that to allow such evidence would be an incentive to law officials to violate the constitutional protections of probationers. Faced with this possibility and because requiring police officers to give the

---

ing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body; and (f) a writ-

ten statement by the factfinders as to the evidence relied on and reasons for revocation.

*Miranda* warnings would not have burdensome effects on the administration of probation, we hold that it was error to admit the testimony of Deputy McBreen as to appellant's admissions.

We do not, however, think the foregoing requires reversal. The testimony of Officer McBreen was not the only evidence upon which the court based its revocation of probation. The transcript of testimony made at the hearing on revocation of probation discloses that the appellant while in custody in jail was transported to the Maricopa County General Hospital, where a urinalysis was taken which showed positive for morphine. The urinalysis was taken one day prior to appellant's conversation with Officer McBreen. We think this is sufficient to establish by independent evidence that the appellant was not complying with the conditions of his probation.

Appellant also contends that hearsay testimony is not sufficient upon which to base a revocation of probation. Rule 27.7(b)(3), Arizona Rules of Criminal Procedure, 17 A.R.S., specifically provides for the admission of hearsay and we have held that probation can be revoked exclusively on hearsay testimony. Our decision in *State v. Belcher,* 111 Ariz. 580, 535 P.2d 1297 (1975), resolves this issue against the appellant.

For the foregoing reasons, the judgment of the Superior Court is affirmed.

CAMERON, C. J., and HOLOHAN and GORDON, JJ., concur.

HAYS, Justice (specially concurring in the result):

I know of no decision of the United States Supreme Court which mandates the application of *Miranda v. Arizona,* 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to probation revocation proceedings. I need look no further than the majority opinion for cases which emphasize that a probation revocation hearing is not a criminal proceeding. *Morrissey v. Brew-*

*er,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The purpose of a revocation hearing is for the trial judge to ascertain if continued probation is merited in the best interests of the probationer and society. *State v. Bates,* 111 Ariz. 202, 526 P.2d 1054 (1974). As long as the use of the confession is properly restricted to the issue of probation revocation, it is detrimental to the concept of probation to turn a revocation hearing into a criminal proceeding when by intent the revocation hearing should serve a purpose similar to that of a presentence report. In this context, I note that even hearsay is permitted in determining whether probation should be revoked. Rule 27.7, Rules of Criminal Procedure.

The majority opinion defeats the rehabilitative purpose for which probation as a concept was established and constructs an additional procedural barrier to individual therapy.

I concur in the result.