NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ALBERT EDWARD NASH, JR., *Appellant*.

No. 1 CA-CR 15-0162
FILED 10-27-2015

Appeal from the Superior Court in Yavapai County
No. P1300CR14337
The Honorable Jennifer B. Campbell, Judge

**AFFIRMED IN PART, VACATED IN PART AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Colby Mills
*Counsel for Appellee*

David Goldberg, Attorney at Law, Fort Collins, CO
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Donn Kessler delivered the decision of the Court, in which Judge Andrew W. Gould and Judge *Pro Tempore* Dawn M. Bergin[1] joined.

---

**K E S S L E R**, Judge:

¶1        Albert Edward Nash, Jr. appeals the revocation of his probation.  Nash argues there was insufficient evidence to substantiate violations of Conditions 4 and 10 of his probation, and that these conditions are unconstitutionally vague and overbroad.  For the following reasons, we affirm the order finding Nash in violation of two conditions of probation, vacate the order to the extent it found him in violation of a condition based on walking through a park, and remand this matter for the court to decide whether to revoke Nash's probation for the two other violations and the ultimate disposition.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        In 1990, pursuant to an *Alford*[2] plea, Nash was found guilty of two counts of attempted child molestation, class 3 felonies.  He was sentenced to imprisonment for count one and given a suspended sentence of standard probation for a term of twenty years for count two.  In 2009, Nash pled guilty to furnishing harmful items to minors, a class 4 felony, and was sentenced as a repetitive offender to an aggravated term of six years' imprisonment.[3]  The court found that his crime also constituted a violation of the conditions of his probation, and ordered his probation

---

[1] The Honorable Dawn M. Bergin, Judge Maricopa County Superior Court, was authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to Article 6, Section 3, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-145 to -147 (2003).

[2] *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

[3] Nash placed a photograph of his genitalia with a telephone number in a restroom at a public park.

reinstated for his lifetime upon his release from prison for the separate 2009 offense.

¶3            The 2009 conditions of probation imposed upon Nash for life stated in relevant part:

> 4. Not go to or loiter near school yards, parks, playgrounds, arcades or other places primarily used by children under the age of 18 without the prior written approval of the probation officer.
>
> . . . .
>
> 10. Not possess any media that is sexually oriented and/or that contains depictions of partially or fully exposed breasts, buttocks, or male or female genitalia. Not possess or view any material deemed inappropriate by treatment staff or the probation officer. This includes, but is not limited to, the possession of any printed material or access to any electronic communications, Internet, cable network or satellite company that offers any depictions that contain partial or full nudity, sexual acts or inducements.

¶4            In October 2014, Nash's probation officer ("PO") was alerted by a probation surveillance officer that the officer viewed Nash's cell phone and found a photograph of a penis which Nash eventually admitted was a photograph that he took of himself to send to his girlfriend. The next day, the PO filed a petition to revoke Nash's probation on this basis as a violation of Condition 10. The petition also alleged two separate violations of Condition 4 based on Nash walking through Granite Creek Park on September 7, 2014, and going onto the grounds of the First Baptist Church/School without permission on September 8, 2014.

¶5            At the violation hearing, the PO testified that Nash admitted to taking the photograph of his penis while he was in a bathroom, and that he texted the photo to his 50-year-old girlfriend, M. The PO testified that it was not a violation of probation for Nash to associate with adult women, nor to have a cell phone, and there was nothing else on his phone constituting a probation violation, but he was not allowed to possess a photograph on his phone of his genitalia.

¶6            The PO further testified that on September 7, Nash walked through a public park that based on her experience is "frequented" by minors. According to Nash's GPS ankle bracelet which is monitored daily,

he was in the park for five minutes, entering at 2:42 p.m. and exiting at 2:47 p.m. but he did not have the PO's prior written approval to be there. Although the PO confirmed that Nash told her he needed to take a shortcut through the park, she did not remember the weather that day or that it was storming. According to the PO, Nash was not loitering, there was no evidence that children were at the park at that time, and Nash never went to the park again.

¶7        The PO also testified that on Monday September 8, a surveillance officer monitoring Nash's GPS location noticed at 3:00 p.m. Nash was "sitting on the bench in front of First Baptist School" without prior written approval to be there. She testified that within minutes, the officer went to speak with Nash about being there and that the officer observed minors around. Nash, however, was not observed interacting with any minors.

¶8        On cross-examination the PO testified both that "the building where [Nash] was is not school grounds" and "I don't know how the buildings work." The PO was aware that First Baptist operates a soup kitchen on Mondays and testified that Nash told her he was there to help set-up for the soup kitchen.[4]

¶9        AA, who worked at the soup kitchen, explained that although the school and the soup kitchen are on the same property, First Baptist has separate buildings, both the school and the church sanctuary are across the alley from the building where soup kitchen dinners are held, and there are never children in the soup kitchen building.

¶10        Nash argued in closing that Condition 10 was unconstitutionally vague and overbroad, but did not contest the constitutionality of Condition 4. The superior court noted that if there was anything in either condition which was vague to Nash, he had the "opportunity to discuss this issue and to ask questions. So if there was any unclear portion . . . Nash was given ample opportunity to discuss that with his probation officer."

_____

[4] The PO also testified that following the incident, Nash was given permission to go on the First Baptist property on Mondays to attend the soup kitchen and had never violated these permissible limitations: "We allowed him for a very small window of time after school would be out and kids would not be there unless they were helping with the soup kitchen."

¶11    The superior court determined Nash violated Condition 10: "When you read [Condition 10] in its entirety, it's quite clear not to possess any media that is also sexually oriented. When we talk about the definition of media, that could be pictures. That could be videos. That could be anything or that contains depictions of partially or fully exposed . . . male . . . genitalia.  So when I look at that first line [of Condition 10] . . . just independently from the rest of the communication, I think it's clear that a picture of anyone's genitalia . . . possessed by [Nash] is a violation of his probation."   The court also determined that Nash violated Condition 4 because he "voluntarily went into a park," and because he "loitered near a school."  The court stated: "What we heard from [the PO] was that at 3:00 o'clock when school typically let's [sic] out, [Nash] was sitting on a bench, not in the soup kitchen. . . . Three o'clock in the afternoon he was sitting on a bench on the Baptist property when school was letting out is much different than being in the building working in the soup kitchen."

¶12    The superior court revoked Nash's lifetime probation and sentenced him to a slightly mitigated term of 6 years' imprisonment with 249 days' presentence incarceration credit.

¶13    Nash timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003), 13-4033(A)(3), (4) (2010). *See State v. Regenold*, 226 Ariz. 378, 380, ¶ 12 (2010) (determining A.R.S. § 13-4033(B) did not preclude an appeal from a contested probation revocation and leaving open the possibility that A.R.S. § 13-4033(A)(3) or (A)(4) provides jurisdiction); *State v. Ponsart*, 224 Ariz. 518, 519-22, ¶¶ 2-12 (App. 2010) (stating any defendant may appeal a contested finding that probation was violated, and determining in appeal from probation revocation that A.R.S. § 13-4033(A)(3) or (A)(4) provided jurisdiction).

## DISCUSSION

I.    **Nash's constitutional challenges to his conditions of probation are not procedurally precluded, but his challenges to Condition 4 are waived absent fundamental error**

¶14    Relying on *State v. Smith*, 129 Ariz. 28, 31 (App. 1981), the State contends that Nash is precluded from claiming on appeal from his probation revocation that Conditions 4 and  10 are unconstitutional because he did not raise such arguments when the conditions were first imposed.

¶15    We disagree. *Smith* does not govern the situation here. Upon conviction, Smith told the court that he was willing to make restitution to

the victim and might sell his house to do that. *Smith*, 129 Ariz. at 29. The superior court sentenced Smith to probation and imposed a condition that prohibited Smith from allowing his house to be homesteaded. *Id.* Smith did not object to the imposition of the condition. He then appealed from the probation order, and for the first time on appeal, argued the condition violated public policy and was illegal. *Id.* at 29-30.

**¶16** Because Smith argued for the first time on appeal that statutes granting a homestead exemption are paramount and not susceptible to interference, we held he willingly waived his homestead rights and the waiver did not violate public policy or constitute an illegal condition of probation. *Id.* at 30-31. "We also [held] that [Smith] by his conduct has waived his right to object to the trial court's imposition of the homestead waiver condition as a term of probation. The appropriate time to consider any objections which a defendant might have to the terms of his probation is the time of imposition of those terms. Otherwise, the trial judge is effectively deprived of the opportunity to consider the imposition of other sentencing alternatives that might then be open to the trial court." *Id.* at 31.

**¶17** In contrast, Nash has not deprived the court of the opportunity to consider sentencing alternatives in light of the objections to Condition 10. Nash raised his constitutional objections as to Condition 10 at the probation violation hearing, the court considered the objections and made determinations in light of the objections. Unlike *Smith*, Nash does not contend the challenged conditions should never have been imposed. Unlike *Smith*, it cannot be said that Nash waived any objection to the probation conditions simply because he did not appeal when the conditions were imposed in 2009. Rather, Nash's constitutional challenges based on overbreadth and vagueness arose because of the way in which his 2009 conditions were interpreted and applied to him to find a violation and revoke his probation. *See, e.g.*, *State v. Herrera*, 121 Ariz. 12, 14 (1978) ("After the revocation of probation the defendant could have appealed from the sentence imposed or any issues raised by the revocation of his probation." (citation omitted)). Nash raised these objections at an appropriate time, when the court was considering the proper construction of Condition 10 to determine whether he violated probation. If, as the State argues, Nash could only raise these objections in the abstract when they were first imposed, the superior court may have been forced to consider a myriad of speculative possibilities of how the conditions might be overbroad and vague without context or any factual bases.

**¶18** Nash's case more closely resembles *State v. Martin*, 171 Ariz. 159 (App. 1992). Martin's probation was revoked and he appealed alleging

the superior court erred by finding he violated his condition of probation. *Martin*, 171 Ariz. at 160. Because we determined the condition was overbroad and vague we determined the evidence was insufficient to support the violation. *Id.* at 160.

¶19 Thus, we determine Nash is not procedurally precluded from raising properly preserved constitutional challenges to the conditions of his probation. However, because Nash did not argue in the superior court that Condition 4 is vague and overbroad, he has waived these claims and we review only for fundamental error. *See, e.g.*, *State v. Peralta*, 175 Ariz. 316, 318 (App. 1993) (reviewing only for fundamental error in appeal from probation revocation in which probationer waived four issues because he did not raise them in superior court); *State v. Nickerson*, 164 Ariz. 121, 122 (App. 1990) (reviewing for fundamental error and finding none in appeal from disposition continuing probation with additional conditions; probationer challenged imposition of additional condition on appeal but waived the issue because did not object in superior court); *State v. Bouchier*, 159 Ariz. 346, 347-48 (App. 1989) (finding waived claim that defendant is not subject to sex offender registration as condition of probation because failure to timely object in superior court; determining failure to object in superior court to claim on appeal that ten-year term exceeded statutory maximum was fundamental error which cannot be waived).[5]

## II.    Condition 10

¶20 Nash argues that there is insufficient evidence showing he violated Condition 10 and argues the condition is unconstitutionally vague and overbroad. Because we have a duty to avoid deciding constitutional issues if possible, *Fragoso v. Fell*, 210 Ariz. 427, 430, ¶ 6 (App. 2005), we first

---

[5] The State also contends that at the revocation hearing, Nash conceded Condition 4 was not overbroad or vague. We do not read the transcript to contain such a concession. When asked by the superior court if he also wanted to raise a constitutional objection to Condition 4, Nash maintained that given the court's conclusion that he could have asked his probation officer to clarify Condition 10, any objection to Condition 4 was moot. We do not agree that a challenge to one alleged violation somehow moots other challenges to different alleged violations, *see, e.g.*, *infra* ¶¶ 45-46, but can see how counsel may have believed arguments about Condition 4 were futile in light of the court's resolution of essentially the same constitutional arguments regarding Condition 10.

address whether there is sufficient evidence that Nash violated the condition.

### A. There is sufficient evidence of Nash's violation of Condition 10

**¶21** "We will uphold a trial court's finding that a probationer has violated probation unless the finding is arbitrary or unsupported by any theory of evidence." *State v. Thomas*, 196 Ariz. 312, 313, ¶ 3 (App. 1999). Probation violations "must be established by a preponderance of the evidence." Ariz. R. Crim. P. 27.8(b)(3). "Revocation hearings are flexible and not subject to the same rules of evidence and procedure as govern criminal trials." *State v. Smith*, 112 Ariz. 416, 419 (1975) (internal quotation marks and citation omitted). "We view the evidence in the light most favorable to sustaining the court's finding." *State v. Tatlow*, 231 Ariz. 34, 39-40, ¶ 15 (App. 2012).

**¶22** Nash argues that there was no reliable evidence as to "whether the photo of [Nash's] penis was 'sexually oriented' or that [Nash] specifically knew that such harmless non-sexually deviant conduct was prohibited under the terms of his sex offender probation."

**¶23** We disagree. Nash's arguments conflate the requirements of Condition 10 which states that Nash may "[n]ot possess any media that is sexually oriented *and/or* that contains depictions of partially or fully exposed . . . male . . . genitalia." (Emphasis added.) According to the plain language of Condition 10, a media depiction containing exposed male genitalia is enough to violate Condition 10; the depiction need not also be "sexually oriented." In other words, Nash may not possess media that is sexually oriented *or* media that contains depictions of exposed male genitalia. Here, Nash does not challenge that the photograph on his phone is media or that it depicts exposed male genitalia.

**¶24** Nash also argues that there was no reliable evidence that he willfully violated Condition 10. A court may revoke probation only if the violation was willful, *i.e.*, the defendant was either aware or could have been aware of the condition and was able to comply with it. *See State v. Alves,* 174 Ariz. 504, 506 (App. 1992) (determining court cannot revoke probation if the defendant was not aware and could not have been aware of the condition); *State v. Robinson*, 142 Ariz. 296, 297-98 (App. 1984) (determining in case involving revocation for failure to pay fines that court cannot revoke probation and sentence defendant to imprisonment unless it considers defendant's ability to comply and determines non-compliance

was willful refusal as opposed to failure after bona fide effort). Here, Nash knew he was taking a photograph of his genitalia and admitted this to his PO. *See supra* ¶ 5.

**¶25**　　　　Assuming Condition 10 is constitutional, there is sufficient evidence to support the superior court's determination that Nash violated that condition.

### B.　　Condition 10 is not unconstitutionally vague

**¶26**　　　　Nash argues that Condition 10 is unconstitutionally vague because "it indicated in the same sentence that [Nash] not possess media that is 'sexually oriented and/or' containing depictions of male genitalia but did not expressly indicate that a non-sexually oriented picture of one's own or any other adult's genitalia was prohibited." Accordingly, he argues "a person of ordinary intelligence would not be reasonably on notice that a photo of one's own penis in a non-sexually oriented pose violated this condition."

**¶27**　　　　We review questions of constitutional law de novo. *Thiele v. City of Phoenix*, 232 Ariz. 40, 42, ¶ 11 (App. 2013); *see Maricopa Cty. Juv. Action No. J-83341-S*, 119 Ariz. 178, 181 (App. 1978) ("[P]robation is not to be considered a matter of grace, 'but is a liberty protected by the 14th Amendment of the United States Constitution, a liberty of which the probationer may not be deprived without due process of law . . . .'").

**¶28**　　　　Conditions of probation "violate due process rights if a person of ordinary intelligence cannot understand what conduct is required or prohibited," *State v. Elmore*, 174 Ariz. 480, 483 (App. 1992), or if the condition "permits arbitrary and discriminatory enforcement," *State v. Kessler*, 199 Ariz. 83, 87, ¶ 15 (App. 2000); *see City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (explaining a law can be unconstitutionally vague in two ways).[6] "[A] finding of a violation of probation is unconstitutional if that finding is premised upon a statutory construction that denies a probationer fair warning that certain conduct would be construed by the court to be in violation of the court's order of probation." *State v. Sheehan*, 167 Ariz. 370,

---

[6] We do not understand Nash to be arguing the condition is vague because it could permit arbitrary and discriminatory enforcement.

372 (App. 1991) (citing *Douglas v. Buder*, 412 U.S. 430, 432 (1973)).[7] A probation condition is unconstitutionally vague if a person of ordinary intelligence must necessarily guess at its meaning because it lacks ascertainable standards of guilt. *Pima Cty. Juv. Appeal No. 74802-2*, 164 Ariz. 25, 27-28 (1990) (holding that statute which formed basis for probation revocation was not unconstitutionally vague), *abrogated on other grounds by State v. Getz,* 189 Ariz. 561, 566 n.4 (1997).

**¶29**　　　　Nash's argument is unavailing.　Just because Condition 10 does not explicitly state that media containing a depiction of a person's own genitalia is also a violation, it does not diminish the clarity of the condition with respect to the all-encompassing prohibition of possessing *any* media that contains depictions of exposed male genitalia.　This necessarily includes a media depiction of a person's own genitalia. The same is true as to Nash's argument that the probationary term does not expressly refer to adult genitalia.　A person of common intelligence would understand that no media containing a depiction of any exposed male genitalia, whether that of an adult or a minor, is permitted under Condition 10.

### C.　　Condition 10 is not unconstitutionally overbroad

**¶30**　　　　Nash also argues that Condition 10 is unconstitutionally overbroad because it "prohibited [Nash] from possessing photos of his own genitalia and consensually sharing it with his adult girlfriend" which is not otherwise a violation of law and is protected conduct under the First Amendment rights to speech and association.　He asserts this provision is overly broad because it would also prohibit a probationer from painting a picture or taking a photo of a consenting nude man or woman, or drawing a picture of one's own body.　Nash acknowledges that although probationary conditions may restrict a defendant's constitutional rights, such as those of speech and association, to a degree not permissible outside the criminal justice system, courts only uphold such conditions when the conditions bear a reasonable relationship to the goals of probation.　Nash argues that the conditions here have "literally no relationship to the goals of [his] sex offender probation as they bear no direct relationship to children and in fact punished behavior that probation should condone as part of a child sex offender's treatment—consensual adult sexual behavior."

---

[7] We recognize that the superior court did not expressly rule on any of Nash's constitutional arguments except to indicate that if he had any question about them he could have talked to his PO. *See supra* ¶ 10. This is of no moment since our review is de novo.

¶31        The Arizona Supreme Court has explained that although arguments about constitutional overbreadth of statutes are primarily attacks on the facial validity of statutes to protect the constitutional rights of others, courts also consider such attacks as applied to the constitutionally protected conduct of the specific defendant.  *Pima Cty. Juv. Appeal No. 74802-2*, 164 Ariz. at 30.  As applicable here, "to successfully challenge the facial validity of a statute, the challenging party must demonstrate no circumstances exist under which the challenged statute would be found valid." *Lisa K. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 173, 177, ¶ 8 (App. 2012).

¶32        Nash has not shown that on its face there are no circumstances in which Condition 10 would be found valid.  For instance, if a defendant had possession of child pornography or similar media showing "exposed breasts, buttocks, or . . . genitalia," *see supra* ¶ 3, it would be constitutional.  Although it is also possible to envision certain instances in which Condition 10 might arguably be overbroad, such as possession of an anatomy book for a class, or a depiction of highly regarded art such as Michelangelo's David, this does not prove that Condition 10 is overbroad on its face.

¶33        Nor can Nash prevail on an "as applied" challenge based on the facts here.  As we understand his argument, Condition 10 is not constitutional because it does not reasonably relate to the goals of his rehabilitation, and thus, not reasonably related to his probation because part of his rehabilitation is being permitted to have a consensual sexual relationship with an adult woman.  However, Condition 10 does not limit his ability to have a consensual sexual relationship with another adult.  It only limits his ability to possess media depicting exposed genitalia. He is free to have a consensual relationship with another adult without having possession of that media.  Moreover, we note that contrary to his argument, such a restriction on Nash is not totally disconnected from his past acts or reasonable rehabilitation goals because he previously violated probation by placing a photograph of his genitalia in a public area where people could be expected to find it. *See supra* ¶ 2 and n.3.

## III.    Condition 4

### A.    There is insufficient evidence Nash violated Condition 4 by going to a park primarily used by minors

¶34        Nash argues that Condition 4 prohibits him from going to places primarily used by minors and that there was no "reliable evidence that children frequented . . . the park."  The State argues that the places listed in Condition 4 are examples of places that are necessarily primarily

used by minors and that all the terms of Condition 4 are modified by the phrase "primarily used by children."

¶35          Because "this court is obliged to try and construe the law so as to declare it constitutional," *State v. Boyd*, 201 Ariz. 27, 29, ¶ 13 (App. 2001), we agree with the State that Condition 4's reference to parks is necessarily modified by the phrase "primarily used by children." Condition 4 states Nash was to "[n]ot go to or loiter near school yards, parks, playgrounds, arcades or other places primarily used by children under the age of 18 without the prior written approval of the probation officer." If the reference to park was a standalone term, then Nash would have been forbidden to enter any park for any reason regardless of whether the park was primarily used by minors. We have previously held a condition that prohibits a person convicted of a sex offense from having any contact with minors, is unconstitutionally vague to the extent it was not limited, as applied, to contact even with the minors' parents' consent or with other adults present. *Martin*, 171 Ariz. at 160. Similarly, we held that a probationary term which prohibited patronizing any place where sexually stimulating or sexually-oriented materials were available was unconstitutionally vague and overbroad as applied to food, drug, and department stores as well as movie theaters where such materials might be found. *Maricopa Cty. Juv. Action No. JV-511237*, 189 Ariz. 18, 21 (App. 1996). Similarly, if Condition 4 was read so broadly as to prevent Nash from ever visiting any park, even if it were restricted to adults or primarily used by adults, it might be unconstitutional. Narrowly reading Condition 4 to limit the reference to "parks primarily used by children" avoids us having to reach constitutional questions of overbreadth and vagueness of the condition. *See Fragoso*, 210 Ariz. at 430, ¶ 6.

¶36          Thus, the question presented is whether the State introduced sufficient evidence that Granite Creek Park was primarily used by minors. The only evidence was by the PO who testified that minors frequented the park. Even construing the evidence in the light most favorable to affirm, *Tatlow*, 231 Ariz. at 39-40, ¶ 15, that evidence is insufficient to show a violation by Nash's single visit to a park for several minutes. That minors frequent a park does not necessarily mean that a park is primarily used by minors. Primarily means "[c]hiefly," "mainly," or "[a]t first," "originally." The American Heritage Dictionary of the English Language 1398 (5th ed. 2011). On the other hand, "frequent" or "frequented" means "[o]ccurring

12

or appearing quite often" or "[h]abitual or regular." *Id.* at 702.[8] In any event, based on the circumstances described in *supra* ¶ 6, we cannot agree that Nash's brief shortcut through the park on this one particular occasion is the type of willful conduct that Condition 4 was designed to prohibit. *See, e.g., U.S. v. Burroughs*, 613 F.3d 233, 246 (D.C. Cir. 2010) (construing probation term imposing associational restrictions including not loitering near places where minors congregate as not extending to incidental, unintentional, inadvertent, or chance contact with minors and finding support in survey of case law); *Martin*, 171 Ariz. at 160 (determining mere presence with minors in conventional places impermissibly penalizes "innocent physical presence with other human beings").

¶37 Thus, a preponderance of the evidence does not support a finding that Nash willfully violated Condition 4 by going to a park primarily used by minors and therefore we reverse the finding of a violation. *See State v. Stroud*, 209 Ariz. 410, 412 n.2, ¶ 6 (2005) (stating conviction based on insufficient evidence is fundamental error); *Martin*, 171 Ariz. at 160 (reversing after determining evidence "insufficient to support a violation of [probation condition] as phrased in the probation document"); *see also State v. Veloz*, 236 Ariz. 532, 534, ¶ 3 (App. 2015) (determining failure to specifically argue fundamental error does not require court to deliberately overlook fundamental error when it is found); *State v. Fernandez*, 216 Ariz. 545, 554, ¶ 32 (App. 2007) (vacating and remanding for resentencing after explaining "[a]lthough we do not search the record for fundamental error, we will not ignore it when we find it").

**B.      There is sufficient evidence Nash violated Condition 4 by loitering near a school yard**

¶38 Nash also argues that there was insufficient evidence that he violated Condition 4 which prohibited him from "loiter[ing] near school yards . . . without the prior written approval of the probation officer." Nash asserts that the evidence was insufficient to show a violation because he was not on school grounds but briefly stopped on church property on his way to the soup kitchen.

¶39 We disagree. It is undisputed that Nash was sitting on a bench in front of or near a church school. The PO testified that Nash was on a bench in front of the school, but not actually on school grounds. The

---

[8] On appeal, the State contends there was a playground in the park. We find no such reference in the record and that would still not necessarily establish that the park was primarily used by minors.

PO testified that within minutes of discovering Nash was there, a surveillance officer went to go speak with Nash. According to the PO, the surveillance officer saw minors around at that time although Nash was not interacting with them. Evidence established that Nash did not have prior written approval to loiter near the school yard. *See supra* ¶ 7. While the PO testified she did not know how the school buildings worked, she admitted the building where he was is not school grounds. A worker at the soup kitchen explained that the school and church sanctuary are across an alley from the building where the meals were served, and that meals were served on Monday nights. Construing the evidence in the light most favorably to affirm, the State showed by a preponderance of the evidence that Nash was sitting in front of or nearby the school at 3 p.m. Nash failed to rebut that evidence by testifying that he was supposed to be by the soup kitchen at that time to help serve meals that evening.

> **C.** **Condition 4 is not unconstitutionally vague or overbroad despite not defining the word "primarily"**

**¶40** Condition 4 prohibited Nash from "go[ing] to or loiter[ing] near school yards . . . or other places primarily used by children under the age of 18 without prior written approval of the probation officer." Nash argues the meaning of the term "primarily" is not further defined. Nash also argues that "no children were seen when [he] briefly stopped on Church property shared with a school on his way to assist with setting up and eating a meal at the Church's soup kitchen across the alley and where children were 'never' seen." Finally, Nash argues Condition 4 "broadly prohibited [him] from simply going and assembling . . . [at the Church's] soup kitchen . . . in a place never frequented by children and certainly where no children were present . . . ." We disagree.

**¶41** First, as noted above, a commonly accepted definition of "primarily" is "chiefly," "mainly," or "at first," "originally." *See supra* ¶ 36. A person of ordinary intelligence would know that primary and secondary schools are chiefly used by minors. Second, Nash's contention that there were no children around when he was sitting on the bench assumes that the condition requires minors to be present when he is there. However, there is no such requirement in the probationary term. In any event, the PO testified that when one of the officers went to Nash's location at about 3 p.m., there were students present.

**¶42** Nash's final argument about vagueness and primary argument on overbreadth is that he was really just briefly stopped before going to the soup kitchen and the condition cannot be read to preclude him

from working at the kitchen where no students are present. Nothing in Condition 4 affected or related to his serving meals or helping to prepare meals at the soup kitchen. Nor, based on the evidence presented, did the court apply the term to find Nash in violation by helping to prepare the meals at the soup kitchen.

¶43        Accordingly, we find Condition 4 is not unconstitutionally vague or overbroad as it relates to school yards.

## IV.    Remand for a new disposition hearing is required

¶44        We determine there was insufficient evidence that Nash violated Condition 4 by going to a park primarily used by minors, but that there was sufficient evidence he violated Condition 4 for loitering near a school yard. We also determine the evidence is sufficient that he violated Condition 10. In addition, we conclude that Conditions 4 and 10, as we have construed them, are not unconstitutionally vague or overbroad. We must now decide if we need to remand this matter to the superior court to determine if the court intended to revoke Nash's probation for the two violations rather than the three found by the court.

¶45        Our supreme court has held that when on appeal from a probation revocation the appellate court affirms fewer than all violations leading to revocation, the court must remand the matter for a new disposition hearing "unless the record clearly shows the trial judge would have made the same disposition even without consideration of the violations set aside on appeal." *State v. Ojeda*, 159 Ariz. 560, 562 (1989); *State v. Davis*, 159 Ariz. 562, 563-64 (1989) (citing *Ojeda*); *accord Martin*, 171 Ariz. at 161 (stating "the trial court appears to have relied upon the term 20 violation as a major but not exclusive factor in sentencing," and remanding for a new disposition because "[f]rom the record we cannot determine what the disposition would be without the term 20 violation"); *State v. Jones*, 163 Ariz. 498, 499 (App. 1990) (remanding for new disposition after setting aside one probation violation finding even though superior court had sentenced defendant to presumptive term and stated defendant was getting a "real break").

¶46        We cannot tell from the record whether the superior court would have still revoked probation and sentenced Nash to six years' imprisonment based only on the two violations that remain. At the disposition hearing, the court merely recounted that Nash "has violated the conditions of his probation" and that the court was revoking probation and sentencing Nash to six years' imprisonment. We also note that although

the school yard violation occurred in early September 2014, the State did not seek to revoke Nash's probation until October 23, 2014, the day after it found Nash with the photo. Furthermore, even after the school yard violation, the PO allowed Nash to continue to work at the soup kitchen. *See supra* n.4. Accordingly, we affirm the court's order finding violations of Condition 4 based on the school yard and Condition 10, but vacate the portion of the order for violation of Condition 4 based on going to the park and remand this matter to the superior court to determine if it wants to revoke Nash's probation for the two violations we have affirmed and if so, any sentence to be imposed.

## CONCLUSION

**¶47**       For the reasons stated, we affirm the order finding two violations of Nash's conditions of probation, vacate the order as to the violation based on going to the park and remand for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
FILED : ama